UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL TRIOLO,<br><br>        Plaintiff,<br><br>     v.<br><br>NASSAU COUNTY, NY,<br>and DET. RICHARD C. LEE,<br><br>        Defendants. | ECF CASE<br><br>Case No.  16-CV-2085<br><br>**COMPLAINT** |

   COMES NOW THE PLAINTIFF, Daniel Triolo, by his attorney, Steven M. Warshawsky, for his complaint against the defendants, Nassau County, NY, and Det. Richard C. Lee, and alleging upon personal knowledge and information and belief as follows:

**NATURE OF THE CASE**

   1. This is a civil rights action under 42 U.S.C. § 1983 and New York state law arising from plaintiff Daniel Triolo's arrest on May 18, 2015, by defendant Det. Richard C. Lee of the Nassau County Police Department (the "incident"). Detective Lee subjected Mr. Triolo to false arrest, without probable cause, arguable probable cause, or other legal justification. Because Detective Lee knowingly and intentionally violated Mr. Triolo's clearly established rights, he is not entitled to qualified immunity. By this action, Mr. Triolo is demanding compensatory damages for the harms he has suffered as a result of Detective Lee's unlawful conduct, punitive damages to punish and deter Detective Lee from engaging in similar unlawful conduct in the future, attorney's fees and costs, and all available legal and equitable relief. The plaintiff demands trial by jury.

## PARTIES

2.      Plaintiff **Daniel Triolo (Mr. Triolo or Dan)** is an adult citizen of New York and resides in Levittown, New York.

3.      Defendant **Nassau County, NY,** is a municipality of the State of New York.  The Nassau County Attorney is Carnell T. Foskey.  The Office of the Nassau County Attorney is located at One West Street, Mineola, New York, 11501.  The Nassau County Police Department (NCPD) is an agency or instrumentality of Nassau County.  Nassau County is being sued under New York state law, pursuant to the doctrine of respondeat superior.

4.      Defendant **Det. Richard C. Lee** (Shield No. 1231) is an employee of the Nassau County Police Department.  His rank is Detective.  Upon information and belief, his place of business is the NCPD 5th Precinct located at 1655 Dutch Broadway, Elmont, New York, 11003; (516) 573-6500.  Detective Lee personally participated in the unlawful conduct alleged herein.  At all relevant times, Detective Lee was acting under color of state law and in the scope of his employment with the NCPD.  Detective Lee is being sued in his individual capacity under 42 U.S.C. § 1983 and New York state law.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and civil rights laws of the United States.

6.      This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

7. This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

8. There are no administrative exhaustion requirements for bringing the present civil rights action under 42 U.S.C. § 1983.

9. Mr. Triolo served a valid notice of claim on the Nassau County Attorney on August 14, 2015. A 50-h hearing was conducted by the County on November 9, 2015. To date, the County has neglected or refused to settle this matter administratively. This civil action is being filed within one year and 90 days of the incident.

## FACTUAL ALLEGATIONS

10. On Sunday, May 17, 2015, Mr. Triolo and his wife, Debra, went to visit his grieving mother, Patricia, at her home in Valley Stream, New York, following his father's sudden death on Friday, May 15, 2015. Debra had called earlier that day and had spoken with Patricia, who mentioned that she was emotionally drained but invited them to come over.

11. Mr. Triolo and his wife arrived at his mother's house around 2:15 p.m. Upon their entering the house, Mr. Triolo's estranged younger brother, Stephen, began screaming at Mr. Triolo and his wife to leave. The house smelled of marijuana and Stephen looked "stoned." Mr. Triolo tried to reason with his brother, but his mother, distraught from her husband's death, also yelled at Mr. Triolo and his wife to leave. Patricia also appeared to be under the influence of one or more substances.

12. Mr. Triolo and his wife remained inside the house for only a few minutes. Mr. Triolo and his brother yelled at each other, using strong language, but there was no physical contact between Dan and Stephen or between Dan and Patricia. No one

3

was injured. The furniture inside the house was not disturbed. Mr. Triolo and his wife then exited his mother's house and returned home to Levittown.

13. During the incident at Patricia's house, Debra made a recording with her cell phone, which does not indicate that anyone is having a physical altercation.

14. On May 17, 2015, shortly following these events, Mr. Triolo's older brother, Michael, left threatening voice messages on Debra's cell phone.

15. On May 18, 2015, in the morning, while Mr. Triolo was out on a long bike ride, Debra listened to the voice messages from Michael, who threatened to physically harm Dan, and she called the police to report the threats being made against her husband. Several uniformed officers from the NCPD 8th Precinct responded to the call. They listened as Debra described the situation, then they explained that because the threats were made against Dan, he was the person who would have to make the complaint to the police. After approximately 15 minutes, the officers left. When Mr. Triolo returned from his bike ride, Debra told him about the voice messages and her conversation with the police. Dan told her that everybody was grief stricken and to "just ignore it."

16. Concerned that Mr. Triolo's family members were trying to set him up, Debra took several photographs of Mr. Triolo documenting that he did not have any scratches, cuts, bruises, or other injuries on his face, body, arms, or hands (i.e., evidence that no physical altercation had occurred between him and Stephen and Patricia).

17. On May 18, 2015, in the afternoon, Mr. Triolo, his wife, and their daughter attended his father's wake. They arrived at the funeral home around 2:00 p.m. Shortly after arriving, Mr. Triolo and his wife were accosted by his older sister, Christine, who started making a scene and yelling at them to leave. Eventually they sat down, when Michael and Stephen came over, started making snide comments to Dan, and then assaulted him. Other family members had to restrain Stephen and Michael. To avoid any

4

further confrontations, Dan, Debra, and their daughter (who had run out of the funeral home earlier) left the wake and returned home to Levittown. They arrived home sometime after 3:00 p.m.

18. Following the incident at the funeral home, Mr. Triolo's wife called the NCPD 8th Precinct so Dan could make complaints against Stephen and Michael. Several uniformed officers, including at least one who had responded to the earlier call in the morning, arrived at the Triolo's house. They spoke with Debra and Dan on the front lawn near the side door of the house for approximately 5-10 minutes.

19. While this conversation was going on, around 3:40 p.m., an unmarked police car pulled up across the street and two plainclothes officers exited the car, entered onto the Triolo's property, and approached Mr. and Mrs. Triolo. One of these officers was defendant Det. Richard C. Lee.

20. The officers did not identify themselves or explain why they were there. Detective Lee barked to Dan, "Are you Daniel Triolo?" When Dan answered "yes," Detective Lee ordered, "You are going with me!" Detective Lee handcuffed Mr. Triolo and escorted him to the unmarked police car. When Debra asked why Dan was being arrested, Detective Lee only stated, "He knows what he did." Detective Lee would not listen to Dan and Debra as they tried to explain what had happened at the funeral home. He told them, in sum and substance, "I don't care what happened today. I am here about yesterday and that came first." When Debra tried explaining that she was a witness and nothing had happened yesterday, Detective Lee ignored her.

21. Debra appealed to the police officers from the 8th Precinct, and one of the officers went and spoke with Detective Lee, who walked back to Debra, but he continued to act in a rude and dismissive manner. He interacted with her for only 1-2 minutes. Detective Lee would not allow Debra to explain what had happened at the funeral

5

home. He would not allow her to explain what had happened at Patricia's house the day before. He refused to review the recording that she had made at Patricia's house. He refused to take a witness statement from her. And he refused to accept any complaints against Stephen and Michael, because he stated, in sum and substance, they were "retaliatory" and "tit for tat."

22. Mr. Triolo was placed in the back seat of the unmarked police car and transported to the 4th Precinct. During the ride to the precinct, Detective Lee told Dan that Christine had been calling the precinct since the morning complaining about him and asking that guards be posted at the funeral home to keep him away. Detective Lee said that no one at the funeral home had pressed charges against him. He said that Dan was being arrested for the incident at Patricia's house.

23. Unbeknownst to Mr. Triolo, after the encounter at Patricia's house, Stephen had called the police, who arrived on the scene shortly after Mr. Triolo and his wife had left. According to the police report, the police arrived around 2:30 p.m. The investigating officer was P.O. Schmidt.

24. Upon information and belief, when P.O. Schmidt entered Patricia's house, he would have smelled lingering marijuana smoke, he would have observed that the furniture in the house was not disturbed, and he would have observed that both Stephen and Patricia were acting under the influence of one or more substances. P.O. Schmidt's partner, a female police officer, later commented to Mr. Triolo (after he had been arrested and was at the precinct) that when they responded to Patricia's house, it was "a circus" and "everyone was yelling."

25. Stephen alleged to P.O. Schmidt that he had been assaulted by Dan, including being "punched" in the face with a "closed fist" and "grabbed" on the neck with both hands and "prevented" from breathing. Patricia alleged that Dan had "grabbed me by

6

wrists and pushed me out of the way." Stephen's and Patricia's statements were prepared at the scene by P.O. Schmidt, who had an opportunity to assess their credibility. These allegations were lies, and P.O. Schmidt obviously knew they were lies.

26. In his report, P.O. Schmidt noted that Stephen was not taken to the hospital, that there were "no visible injuries" on Stephen and Patricia – physically impossible if Stephen had been assaulted as he described – that no photographs were taken, that no other evidence was collected, and that no arrest was made because "no offense committed." P.O. Schmidt could have marked "suspect off-scene" to explain why no arrest was made, but he marked "no offense committed." In other words, the investigating officer who was in the best position to evaluate the allegations against Dan concluded that "no offense [was] committed."

27. P.O. Schmidt's police report, including the attached statements by Stephen and Patricia, was the only information Detective Lee relied upon in deciding to arrest Mr. Triolo. The accusations in the criminal complaints, which were sworn to by Detective Lee on May 18, 2015, simply repeat the allegations made by Stephen and Patricia in the report. However, any reasonable police officer would have and should have reviewed the entire report, which explicitly states that there were "no visible injuries" – directly contradicting the allegations against Mr. Triolo and calling into question the credibility of his accusers – and concludes that "no offense [was] committed" – vitiating probable cause for Mr. Triolo's arrest.

28. In addition, before deciding to arrest Mr. Triolo, Detective Lee knew that there was "bad blood" (for whatever reason) between Mr. Triolo and his other family members, which should have caused Detective Lee to consider whether Dan was being falsely accused of these alleged crimes.

29. Under the circumstances of this case, any reasonable police officer would have and should have further investigated the allegations against Mr. Triolo before deciding to arrest him for these alleged crimes. Such further investigation should have included, at a minimum, taking witness statements from Dan and Debra (which Detective Lee refused to do), reviewing the cell phone recording that Debra had taken at Patricia's house (which Detective Lee refused to do), reviewing the photographs that Debra had taken of Dan documenting that he had no physical injuries (which Debra never had the opportunity to show Detective Lee), and conducting a background check on Patricia's address, which would have disclosed multiple prior incidents when Patricia and Stephen had tried to have other family members arrested. After conducting such an investigation, no reasonable police officer would have believed there was probable cause to arrest Mr. Triolo for the alleged crimes.

30. Upon arriving at the precinct, Mr. Triolo was taken upstairs and placed in a small cage-like holding cell with one wrist handcuffed to the wall. At some point, he was taken downstairs to be fingerprinted and photographed, then placed back in the cell.

31. At approximately 9:00 p.m., Mr. Triolo was moved downstairs to a large holding cell.

32. Around 11:00 p.m., Mr. Triolo was taken to Nassau University Medical Center to evaluate his right shoulder, which had been hurting him throughout the arrest. At the hospital, Mr. Triolo declined to be x-rayed because the police officers told him that it was in his best interest to receive treatment quickly. Mr. Triolo's right arm was placed in a sling, and he was discharged around midnight.

33. Upon Mr. Triolo's discharge from the hospital, the police officers removed his arm from the sling and handcuffed him, then transported him to another

location, where he was placed in a holding cell to wait for arraignment. Mr. Triolo remained in the holding cell until approximately 6:00 a.m., on May 19, 2015, when he was bussed with other detainees to the courthouse in Hempstead, New York.

34. At arraignment, Mr. Triolo pleaded not guilty and was ordered released on $500 bail. After arraignment, he was strip-searched down to his underwear and returned to a holding cell. He was released from custody around 10:30 a.m.

35. Mr. Triolo spent a total of approximately 19 hours in police custody.

36. Following his release, Mr. Triolo rushed to attend his father's burial, but he was too late. Mr. Triolo missed his father's burial and the family reception. He also missed the wake for his father that was held on the evening of May 18.

37. Mr. Triolo was charged with two misdemeanor offenses in connection with the alleged incident at Patricia's house: Assault in the Third Degree (P.L § 120.00) and Criminal Obstruction of Breathing (P.L § 121.11). The criminal complaints were prepared and sworn to by Detective Lee. As alleged herein, there was no probable cause, arguable probable cause, or other legal justification for Mr. Triolo's arrest and criminal prosecution by Detective Lee.

38. Two days after his arraignment, Mr. Triolo returned to court and his lawyer spoke with the judge, but nothing happened with his case.

39. On June 4, 2015, Mr. Triolo made a second appearance in court and again his lawyer spoke with the judge, but nothing happened with his case.

40. On July 15, 2015, Mr. Triolo made a third appearance in court, at which time he was granted a 30-day adjournment in contemplation of dismissal. The charges against Mr. Triolo were dismissed and sealed on or about August 13, 2015.

## COUNT ONE:  FALSE ARREST
### (Section 1983; Detective Lee)

41. Plaintiff repeats and re-alleges Paragraphs 1-40 above.

42. The elements of a claim for false arrest under Section 1983 are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.

43. Detective Lee intended to, and did, confine Mr. Triolo.

44. Mr. Triolo was conscious of the confinement.

45. Mr. Triolo did not consent to the confinement.

46. The confinement was not otherwise privileged.

47. There was no probable cause, arguable probable cause, or other legal justification for Mr. Triolo's arrest by the Detective Lee.

48. Detective Lee is not entitled to qualified immunity.

49. Detective Lee's actions violated Mr. Triolo's clearly established rights under the Fourth Amendment.

50. It was not objectively reasonable for Detective Lee to believe that his actions did not violate Mr. Triolo's rights under the Fourth Amendment.

51. Detective Lee acted with intentional, knowing, callous, and/or reckless indifference to Mr. Triolo's rights under the Fourth Amendment.

52. As a result of Detective Lee's unconstitutional conduct, Mr. Triolo suffered loss of liberty, physical pain and suffering (from being handcuffed and confined to jail cells), emotional pain and suffering, and other pecuniary and non-pecuniary injuries, for which he is entitled to an award of compensatory damages.

53. Mr. Triolo is entitled to an award of punitive damages to punish Detective Lee for his unconstitutional conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT TWO: FALSE ARREST
### (New York state law; Detective Lee & Nassau County)

54. Plaintiff repeats and re-alleges Paragraphs 1-53 above.

55. The elements of a claim for false arrest under New York law are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement: and (4) the confinement was not otherwise privileged.

56. Detective Lee intended to, and did, confine Mr. Triolo.

57. Mr. Triolo was conscious of the confinement.

58. Mr. Triolo did not consent to the confinement.

59. The confinement was not otherwise privileged

60. There is no probable cause, arguable probable cause, or other legal justification for Mr. Triolo's arrest by Detective Lee.

61. Detective Lee is not entitled to qualified immunity.

62. Detective Lee's actions were taken without a reasonable basis.

63. Detective Lee's actions were taken in bad faith.

64. Detective Lee's actions were intentional, wanton, and malicious.

65. As a result of Detective Lee's unlawful conduct, Mr. Triolo suffered loss of liberty, physical pain and suffering (from being handcuffed and confined to jail cells), emotional pain and suffering, and other pecuniary and non-pecuniary injuries, for which he is entitled to an award of compensatory damages.

66. Mr. Triolo is entitled to an award of punitive damages to punish Detective Lee for his unlawful conduct and to deter him from engaging in similar unlawful conduct in the future.

67. Because Detective Lee's actions were taken in the scope of his employment with the NCPD, Nassau County is vicariously liable for the harms caused by his tortious conduct.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, plaintiff Daniel Triolo demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiff demands judgment against the defendants for:

 A. A judgment declaring that Detective Lee is liable for false arrest under federal law (Count One);

 B. A judgment declaring that Detective Lee and Nassau County are liable for false arrest under state law (Count Two);

 C. An award of compensatory damages in an amount no less than $200,000 (against all defendants);

 D. An award of punitive damages in an amount no less than $200,000 (against defendant Lee);

 E. An order imposing appropriate equitable remedies on the defendants;

 F. Pre-judgment and post-judgment interest as allowed by law;

 G. Attorney's fees, costs, and disbursements as allowed by law; and

 H. All other relief that the plaintiff may be entitled to under law, or as justice may require.

Dated: April 27, 2016
    New York, NY

            Respectfully submitted,

            *Steven M. Warshawsky*

      By: _____
            STEVEN M. WARSHAWSKY (SW 5431)
            The Warshawsky Law Firm
            Empire State Building
            350 Fifth Avenue, 59th Floor
            New York, NY  10118
            Tel:  (212) 601-1980
            Fax:  (212) 601-2610
            Email:  smw@warshawskylawfirm.com
            Website:  www.warshawskylawfirm.com