**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DANIEL TRIOLO,

                              Plaintiff,

           -against-

NASSAU COUNTY, NY, and DET.
RICHARD C. LEE,

                            Defendants.
-------------------------------------------------------------X

**MEMORANDUM in AND ORDER**

CV 16-2085 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

       Plaintiff Daniel Triolo ("Plaintiff") commenced this action against the County of Nassau (the "County") and Detective Richard C. Lee of the Nassau County Police Department ("Detective Lee" or "Lee") (collectively, "Defendants") following Plaintiff's arrest on two criminal charges in May 2015. The circumstances underlying Plaintiff's arrest involved a dispute between Plaintiff and several of his family members, during which Plaintiff allegedly assaulted his mother and choked his brother. The charges against Plaintiff – Criminal Obstruction of Breathing or Blood Circulation and Assault in the Third Degree – were subsequently dismissed. Plaintiff thereafter commenced the instant action against the Defendants for false arrest under both state and federal law. After the completion of discovery, the Court set the case down for jury selection on December 3, 2018. The civil trial was held from December 3 to December 7, 2018, at which time the jury returned a verdict in favor of Plaintiff on both false arrest claims, awarding him $150,000 in compensatory damages against the Defendants and $35,000 in punitive damages against Detective Lee.

Post-verdict, the Defendants have moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). Defendants contend that: (1) the evidence supports the conclusion that Detective Lee had probable cause to arrest Plaintiff, and the jury verdict must be set aside as a result; and (2) at a minimum, Detective Lee had arguable probable cause to arrest Plaintiff, and is entitled to qualified immunity. *See generally* Defendants' Memorandum in Support of Their Rule 50(b) Motion ("Defs.' Mem.") [DE 51-1]; Defendants' Reply in Further Support of Their Rule 50(b) Motion ("Defs.' Reply") [DE 51-2]. Plaintiff opposes the motion arguing, among other things, that "there was a legally sufficient evidentiary basis for a reasonable jury to decide the case in favor of the plaintiff." *See* Plaintiff's Memorandum in Opposition to Defendants' Rule 50(b) Motion ("Pl.'s Opp'n.") [DE 50]at 1. For the reasons set forth below, Defendants' motion for judgment as a matter of law is DENIED as to the sufficiency of the evidence to support the jury's verdict. However, the motion is GRANTED as to the issue of qualified immunity.

## II. BACKGROUND

### A. Overview of the Facts as Presented at Trial

The Court assumes familiarity with the underlying facts of this case. However, for the sake of context, the Court briefly outlines the facts as presented to the jury at trial. As required, the Court frames the facts in the light most favorable to the Plaintiff as the non-moving party.

Plaintiff's claims in this action arose out of a dispute and alleged physical altercation between Plaintiff and several of his immediate family members on May 17, 2015. Two days earlier, on May 15, 2017, Plaintiff's father passed away. *See* Trial Transcript [DE 51] at 235,

304.[1]  Two days later, on May 17, 2015, Plaintiff drove with his wife Debra, their teenage daughter, and the family puppy to the home of his mother, Patricia Triolo, for a visit.  Tr. 237-38.  When Plaintiff arrived at his mother's home, his younger brother, Stephen Triolo, was present in the house.  Tr. 239-40.  There is a discrepancy in the accounts of what happened next.  According to the testimony of Plaintiff and his wife, upon their entering the home, Stephen Triolo became agitated and started screaming at Plaintiff to leave.  Tr. 41-42, 242.  Plaintiff yelled back, but did not grab, punch, or assault Stephen.  *Tr.* 243.  Plaintiff's mother Patricia also began yelling at Plaintiff, telling him to leave, and also telling him that she did not want him near his father's funeral or wake which was to take place the following day.  Tr. 244-46.  Plaintiff testified that at that point, he and his wife left the house.  At no point prior to their departure did Plaintiff yell at, grab, or threaten his mother.  Tr. 245-46.  Neither Plaintiff nor his wife contacted the police on May 17, 2015.  Tr. 346.

By contrast, Stephen and Patricia Triolo testified that Plaintiff was told he could come to his mother's house and put his dog in her yard.  According to Patricia and Stephen, Plaintiff barged into his mother's home on May 17, 2015 and immediately grabbed Stephen's neck and began punching and attacking him.  Tr. 299, 324.  Patricia testified that she then went to the phone to call 911; however, Plaintiff grabbed her wrist in an attempt to wrangle the phone away from her, causing the phone to fall to the ground and break.  Tr. 324.  The police were called, and both Stephen and Patricia gave sworn statements that Plaintiff, who had left the scene prior to the arrival of the police, had assaulted them.  Tr. 300, 327.  Patricia testified that she

---

[1] All subsequent references to the record of the December 2018 trial are designated "Tr. \_\_\_\_."

3

subsequently went to a walk-in clinic for her wrist and learned that her wrist was sprained. Tr. 326.

A second altercation occurred the following day at the funeral home. Plaintiff testified that he arrived at the funeral home to pay his respects to his father when his sister and her daughter began telling him and his wife to leave. Tr. 251. At that point, according to Plaintiff, his older brother, Michael Triolo, physically assaulted him. Tr. 251-52. Plaintiff testified that Michael jumped onto him and began punching him. Tr. 252. Plaintiff also testified that his brother Stephen began choking him. *Id*. After Plaintiff and his wife Debra returned home, Debra called the police to report what had happened at the funeral home. Tr. 254.

Detective Lee testified that he was assigned to the case on May 17, 2015, at which time he reviewed the Domestic Incident Report prepared by the officer who responded to the call made by Stephen and Patricia. Tr. 155-56. The report included the sworn statements of Stephen and Patricia. Tr. 156. The next morning, Detective Lee spoke with the two complainants, Patricia and Stephen Triolo, by telephone to review and confirm the substance of their statements. Tr. 158. Detective Lee testified that he then spoke with three police sergeants and a district attorney. At that time, it was determined that, based on a Nassau County policy requiring an arrest to be made if a victim makes a sworn statement that a crime occurred, the police had probable cause to arrest Plaintiff for the events of May 17, 2015. Tr. 159-161, 176.

On the afternoon of May 18, 2015, Detective Lee drove to Plaintiff's home and arrested Plaintiff. Tr. 201. He was charged with Criminal Obstruction of Breathing under N.Y.P.L. 121.11 and with Assault in the Third Degree under N.Y.P.L. 120.00(1). Plaintiff spent time in a precinct holding cell where he was handcuffed to a wall. He was subsequently transported to Nassau University Medical Center based upon a shoulder injury sustained earlier that day during

4

the altercation at the funeral home. Tr. 260, 266. Plaintiff was then held in a different location until the next morning, at which point he was transported to criminal court and was eventually released on bail. Tr. 266-69. The criminal charges against Plaintiff were dismissed shortly thereafter. Tr. 272.

### B. Procedural History

Plaintiff filed his Complaint on April 27, 2016. *See* DE 1. On March 24, 2017, Judge Feuerstein referred the case to the undersigned for discovery and pre-trial tasks. *See* Electronic Order of March 24, 2017. This Court met with counsel for a Status Conference on April 6, 2017, *see* DE 15, and a discovery schedule was put in place. Discovery between the parties proceeded through the remainder of 2017. On June 25, 2018, counsel for the parties consented to this Court's jurisdiction for all purposes, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* DE 22, 24.

Counsel filed their Joint Pre-Trial Order on July 27, 2018, *see* DE 25, and the Court held a Pre-Trial Conference with counsel on September 5, 2018. *See* DE 26. The Court set jury selection and trial for December 3, 2018. *See id.* Plaintiff filed a motion *in limine* on October 25, 2018 seeking to preclude Defendants from inquiring into or referring in any manner to the Plaintiff's prior conviction for burglary and assault as a youthful offender, as well as and guilty pleas for driving while impaired, which occurred more than 25 years earlier. *See* DE 27. Defendants did not oppose the motion and it was granted on November 30, 2018. *See* DE 38. Between November 18 and November 21, 2018, counsel submitted their required pre-trial filings. *See* DE 28-37.

Jury selection was conducted on December 3, 2018, followed immediately by the trial. *See* DE 41. Once Plaintiff rested his case on December 4, 2018, Defendants made an oral

5

application for judgment as a matter of law, which the Court denied. *See* DE 42. The Court charged the jury on December 6, 2018. *See* DE 43-44. The jury returned a verdict in Plaintiff's favor and against the Defendants on December 7, 2018 as to both the state and federal false arrest claims. *See* DE 44, 48. The jury awarded Plaintiff $150,000 in compensatory damages with regard to the Defendants and $35,000 in punitive damages as to Detective Lee. *See* DE 48. After the announcement of the verdict, Defendants moved again for judgment as a matter of law. The Court set a briefing schedule for any written motions. *See* DE 39. The fully briefed motion for judgment as a matter of law was filed on February 26, 2019. *See* DE 50-51.

## III. THE PARTIES' ARGUMENTS

### A. Defendants' Motion

Defendants advance two arguments: (1) Detective Lee had probable cause to arrest Plaintiff, which provides a complete defense to the false arrest charges, and therefore the jury's verdict should be set aside; and (2) at a minimum, Detective Lee had "arguable probable cause," entitling him to qualified immunity. As to the first argument, Defendants contend that the sworn written statements of Patricia and Stephen Triolo, confirmed by their statements to Lee over the telephone, provide "overwhelming" evidence as to the existence of probable cause, such that "no reasonable or fair-minded person could find that Lee lacked probable cause to arrest" Plaintiff. Defs.' Mem. at 12. Defendants state that Lee relied on the fact that the statements affirmatively were made under the penalties of perjury, such that "[Patricia and Stephen] knew if they lied, that they could be charged with a misdemeanor." *Id*. Because Detective Lee had sufficient probable cause to arrest Plaintiff at that time based on the two written statements as well as the telephone interviews, Defendants contend that Lee had no obligation to interview Plaintiff or anyone else or to perform any further investigation. *Id*. at 15; *see generally* Defendants' Reply.

6

As to qualified immunity, Defendants state that whether Detective Lee actually had probable cause to arrest Plaintiff, he did have at a minimum "arguable probable cause" to effect the arrest. *See* Defs.' Mem. at 16. In support of their position, Defendants quote extensively from the Second Circuit's decision in *Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2016) and maintain that "an arresting officer is entitled to qualified immunity so long as 'arguable probable cause' was present when the arrest was made." Defs.' Mem. at 18 (quoting *Figueroa*, 825 F.3d at 101). The Defendants point out that the Second Circuit went on to affirm that "[a] police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Defs.' Mem. at 18 (quoting *Figueroa*, 825 F.3d at 101). Utilizing this framework, Defendants argue that it was objectively reasonable for Detective Lee to believe that probable cause existed to arrest Plaintiff based on the information before him at the time of the arrest. *See* Defs.' Mem. at 18-19. As a result, Defendants contend that Detective Lee is entitled to qualified immunity and the jury's verdict must be set aside with respect to the claims against him. *See id.*

### B. Plaintiff's Opposition

In challenging the Defendants argument that "no reasonable or fair-minded person could find that Lee lacked probable cause to arrest," Plaintiff contends that "[t]he defendants' motion founders by overlooking the key legal principle in this case: 'an arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with a crime, has probable cause to effect an arrest *absent circumstances that raise doubts as to the victim's veracity.*" Pl.'s Opp'n. at 2 (emphasis in original) (quoting *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Plaintiff states that it has been his

7

position from the beginning of this case "that there were circumstances known to Detective Lee that raised doubts as to the truthfulness of Stephen Triolo and Patricia Triolo and that should have caused Detective Lee to make a further inquiry before arresting [Plaintiff]." Pl.'s Opp'n. at 2. Moreover, Plaintiff asserts that Detective Lee himself agreed in his testimony that there were circumstances raising doubts as to the veracity of Patricia and Stephen's accounts of the May 17, 2015 incident, which "alone defeats the defendants' motion." *Tr.* 3. In addition to Detective Lee's testimony, Plaintiff points out that the domestic incident report filled out by the initial investigating officer indicated "no offense committed." *Tr.* 4. Although this officer, Officer Schmidt, testified that this notation was a "mistake," Plaintiff argues the jury was entitled to consider this and other evidence to conclude (i) there likely never was an altercation, (ii) Stephen and Patricia were therefore not being truthful, and (iii) a reasonable officer in Detective Lee's position would have realized this and concluded there was no probable cause to arrest. *Id*.

As to qualified immunity, Plaintiff contends that "the law does not permit police officers simply to ignore circumstances raising doubts about the truthfulness of victim statements, which is what happened in this case and which would be necessary for 'any' reasonable police officer to believe there was probable cause to arrest Mr. Triolo." Pl.'s Opp'n. at 7.

## IV. DISCUSSION

### A. Sufficiency of the Evidence

#### 1. Rule 50(b): Standard of Review

"In substance, Fed. R. Civ. P. 50(b) provides that if a jury returns a verdict for which there is not a legally sufficient evidentiary basis, the District Court may either order a new trial or direct the entry of judgment as a matter of law." *Welch v. United Parcel Serv., Inc.*, 871 F.

Supp. 2d 164, 172 (E.D.N.Y. 2012); *Roberts v. United Parcel Service, Inc.*, 115 F. Supp. 3d 344, 357 (E.D.N.Y. 2015).  The party moving for Rule 50(b) relief "bears a heavy burden to prevail." *Concerned Area Residents for Env't v. Southview Farm*, 34 F.3d 114, 117 (2d Cir. 1994); *Walsh v. City of New York*, 742 Fed. App'x 557, 561 (2d Cir. 2018) (summary order) ("This burden is 'particularly heavy' when, as here, 'the jury has deliberated in the case and actually returned its verdict.'") (quoting *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005)).  A district court may only grant such a motion "if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Kinneary v. City of New York*, 601 F.3d 151, 155 (2d Cir. 2010) (quoting *Brady v. Wal–Mart Stores, Inc.,* 531 F.3d 127, 133 (2d Cir. 2008)); *Walsh v. City of New York*, 742 Fed. App'x at 561).  In order to bring a motion under Rule 50(b), the movant must have made a Rule 50(a) motion before submission of the case to a jury since such action is a necessary predicate to the post-trial Rule 50(b) motion. *Wierzbic v. Howard*, 331 F.R.D. 32, 45 (W.D.N.Y. 2019).  Defendants' counsel fulfilled that prerequisite here.

In reviewing a Rule 50(b) motion, "'[t]he court must consider the evidence in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence,' bearing in mind that a jury is free to believe or disbelieve any part of a witness's testimony." *Levans v. Delta Airlines, Inc.*, 12-CV-0773, 2016 WL 9447211, at *3 (E.D.N.Y Aug. 1, 2016) (*quoting Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007)).

9

### 2. A him pplication to the Facts

The Court finds that Defendants have failed to satisfy their heavy burden under Rule 50(b) by showing "a complete absence of evidence supporting the verdict." As an initial matter, the jury was properly instructed that "[a]n arresting officer who is advised of a crime by a person who claims to be a victim and who has signed a complaint charging someone with the crime has probable cause to effect an arrest *unless the circumstances raise doubts as to the victim's truthfulness*." Tr. 400 (emphasis added); *see Singer*, 63 F.3d at 119 ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."). Defendants argue that it was proper for Detective Lee to conclude from Patricia and Stephen Triolo's sworn statements and telephone interviews alone that Plaintiff had committed the crimes with which he was charged. Plaintiff's contention that the circumstances obligated Detective Lee to perform a further investigation, according to Defendants, "fails to acknowledge the well-established law as to what constitutes an officer's valid determination of probable cause to arrest." Defs.' Reply at 3. However, as the above instruction on the law makes clear, even if witness statements "are considered presumptively reliable, a report of a crime alone will not necessarily establish probable cause." *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994). Defendants' position fails to acknowledge this principle him and would require the Court to overturn the jury's determination that circumstances existed sufficient to raise doubts on the part of a reasonable

officer as to Patricia and Stephen Triolo's truthfulness – a determination appropriate under the applicable standard[2] and one that finds support in the factual record.

As to the record here, there are specific pieces of evidence which support the jury's verdict. As Plaintiff points out, the jury heard Detective Lee testify that the lack of any visible injuries on Stephen Triolo did raise a doubt in his mind as to the veracity of Stephen's story. *See* Tr. 185-86. The fact that Detective Lee stated he believed Stephen and Patricia's version of events notwithstanding this doubt is irrelevant; subjective belief is not relevant to determining whether sufficient doubt exists so as to negate probable cause. *See Devenpeck v. Alford,* 543 U.S. 146, 152 (2004) ("[A]n arresting officer's state of mind (*except for the facts that he knows*) is irrelevant to the existence of probable cause.") (emphasis supplied). As the Supreme Court observed in *Devenpeck*, a police officer's "subjective reason for making the arrest need not be

---

[2] As a general matter, "where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007). Where there exists such a dispute, the probable cause determination is a mixed inquiry of fact and law. *See Ornelas v. United States*, 517 U.S. 690, 696 (1996) ("The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact . . . ."). The question put to the jury here – whether Detective Lee had probable cause to arrest Plaintiff for the two crimes charged – was a mixed question of law and fact. This question, which was the product of extensive consultation with all counsel, required the jury to determine what information Detective Lee considered (that is, what facts were known to him) in concluding he had probable cause to arrest, and, subsequently, whether a reasonable officer considering the same information would doubt the veracity of Patricia and Stephen Triolo to a degree sufficient to negate probable cause. *Cf. Zirlin v. Vill. of Scarsdale*, 365 F. Supp. 2d 477, 484 (S.D.N.Y. 2005) ("Traditionally, the Supreme Court has recognized the jury's function in deciding when law enforcement activity ceases to be lawful and intrudes upon a Constitutional right."), *aff'd*, 161 Fed. App'x 100 (2d Cir. 2005).

the criminal offense as to which the known facts provide probable cause." *Id*. at 153; *see Nieves v. Bartlett*, 139 S. Ct. 1715, 1725, 204 L. Ed. 2d 1 (2019).

The jury here was able to consider the fact that the incident report from May 17, 2015 – a report reviewed by Detective Lee, *see* Tr. 177 – affirmatively indicated that no offense had been committed. Tr. 106. The jury was free to discredit Officer Schmidt's testimony that this notation was simply a "mistake." *Id*. likewise, the jury was free to conclude that these considerations would have indicated to a reasonable officer in Detective Lee's circumstances that further investigation was necessary -- including steps such as in-person interviews of Patricia and Stephen Triolo, *any* interview at all of Plaintiff and his wife, and a review of the 911 call report – none of which Detective Lee undertook.[3] *See Zellner*, 494 F.3d at 369 ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Therefore, although Defendants contend that "[t]here can be no question or doubt that Stephen's and Patricia's sworn written statements, which subjected them to criminal prosecution if falsely made, provided trustworthy information to Lee that

---

[3] In *Christman v. Kick*, the district court stated the following as to how a police officer should treat conflicting information in the probable cause inquiry:

> [I]t would seem that a police officer may cho[o]se to rely on either of two conflicting sworn statements in determining probable cause, especially when he personally took the statements and was thus able to assess the credibility of the two victims/perpetrators, there was some uncontroverted evidence that supported one of the statements *. . . and there was no other evidence that raised questions as to the veracity of the statement upon which he relied.*

342 F. Supp. 2d 82, 88 (D. Conn. 2004) (emphasis added).

12

plaintiff attacked both of them." Defs.' Reply at 3. The jury's verdict, which was supported by the totality of the evidence necessarily compels a contrary conclusion.

Defendants' Rule 50(b) motion to set aside the verdict based on Defendants' contention that there was sufficient evidence to support a finding of probable cause to arrest the Plaintiff is DENIED.

### B. Qualified Immunity

#### 1. *Legal Principles*

"Where it has been conceded or established that [ ] officers arrested the plaintiff without a warrant and without probable cause, the question raised by the qualified immunity defense is whether it was objectively reasonable for the officers to believe they did have probable cause." *Zellner*, 494 F.3d at 369. Referring to this statement as the "arguable probable cause" standard, the Second Circuit has noted that "[a]rguable probable cause exists when 'a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law.'" *Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir. 1997) (emphasis in original) (quoting *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001)); *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) ("A police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."). "Put another way, an arresting officer will find protection under the defense of qualified immunity unless 'no reasonably competent officer' could have concluded, based on the facts known at the time of arrest, that probable cause existed." *Figueroa*, 825 F.3d at 100 (citing *Malley v. Briggs*, 475 U.S. 335, 342 (1986)).

13

The ultimate determination of whether "no reasonably competent officer" could have concluded that probable cause existed – and therefore whether an arresting officer is entitled to the defense of qualified immunity – is a question of law for the court. *Zellner*, 494 F.3d at 368; *Stephenson v. Doe,* 332 F.3d 68, 81 (2d Cir. 2003). Such a legal finding can be appropriately made on a post-trial Rule 50(b) motion in light of the facts found by the jury. *See Dorceant v. Aquino*, No. 15-CV-7103, 2018 WL 3869891, at *5 (E.D.N.Y. Aug. 15, 2018) (granting qualified immunity on a post-trial Rule 50(b) motion and explaining that "it is the court's responsibility to determine, based on undisputed facts or factual findings made by the jury, whether an officer's conduct was objectively reasonable"); *Guzman v. Jay*, 303 F.R.D. 186, 195 (S.D.N.Y. 2014) (granting qualified immunity on defendant's post-trial Rule 50(b) motion).

### 2. *Application to the Facts*

Defendants' argument that Detective Lee is entitled to the protection of qualified immunity finds more support in the record than their argument as to the existence of probable cause. While Detective Lee did not have actual probable cause as a matter of law to arrest Plaintiff for criminal obstruction of breathing or third-degree assault, the record is clear enough for the Court to determine that Detective Lee had *arguable* probable cause to arrest Plaintiff for these crimes. From Patricia and Stephen Triolo's sworn statements and from their confirmation of the substance of those statements in their telephone interviews with Detective Lee, even considering the evidence undermining their accounts as discussed above, officers of reasonable competence could disagree as to whether the probable cause test was met. That is to say, based on consideration of all the evidence available to Detective Lee at the time he arrested the Plaintiff, the Court is not in a position to conclude that "no reasonable officer" could have

determined that probable cause existed to arrest Plaintiff for criminal obstruction of breathing or third-degree assault him .[4] *Figueroa*, 825 F.3d at 104.

While the absence of evidence of physical injury on Stephen Triolo and similar considerations were considered by the jury in their determination that actual probable cause to arrest had been negated, the Second Circuit has found that "the lack of physical evidence of an assault on [an alleged victim's] body [was] not fatal to finding arguable probable cause when [the victim] had reported that she had been assaulted." *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014) (citing *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir. 1989)). Other considerations, such as the alleged intoxication of an accuser, have also been found insufficient by the Second Circuit to defeat arguable probable cause. *See Betts*, 751 F.3d at 83 ("Even assuming that the officers were aware that [the victim/accuser] was intoxicated, absent other indicia raising concerns of reliability, the officers were not unreasonable in surmising that an offense had been committed by [the plaintiff]."). Moreover, it was not objectively unreasonable for Detective Lee and his colleagues[5] to give considerable weight to the victim statements of Patricia and Stephen Triolo in light of language in the statements subjecting them to the penalties of perjury. *See Stansbury v. Wertman*, 721 F.3d 84, 91 (2d Cir. 2013) ("This Court affords greater weight when

---

[4] The Court need not engage in a detailed analysis of the elements of the two crimes under the New York Penal Law. The post-trial dispute here is not over whether Detective Lee had arguable probable cause (or actual probable cause, for that matter) to believe that some, all, or none of the elements of the charged crimes had been satisfied. Rather, the dispute is a binary one: could an officer in Lee's shoes reasonably have relied on the available information to believe the narrative as set forth by Patricia and Stephen Triolo? It cannot reasonably be disputed that if the answer to this question is yes, Lee would have probable cause to believe the elements of the two charged crimes were satisfied. The jury answered this question in the negative, failing to find the existence of actual probable cause.

[5] The determination that probable cause existed was made by Detective Lee, three sergeants, and an assistant district attorney. *See* Tr. at 159-60

witnesses testify or swear 'under threat of the criminal sanction for perjury.'") (quoting *United States v. Hernandez,* 85 F.3d 1023, 1028 (2d Cir. 1996)); *see also Thomas v. Cty. of Putnam*, 262 F. Supp. 2d 241, 246-47 (S.D.N.Y. 2003) ("[T]hat the sworn information before Deputy Langley, supported by his observations of Buchanan's injuries, was sufficient to establish probable cause to arrest plaintiff.").

When the contours of the arguable probable cause doctrine are thus elucidated, the determination that probable cause existed to arrest Plaintiff for criminal obstruction of breathing and third-degree assault was not objectively unreasonable. As a result, Detective Lee's conduct entitles him to qualified immunity, and he is need for immune from suit under both federal *and* state law. *Hargroves v. City of New York*, No. 03-CV-1668, 2014 WL 1271024, at *3 (E.D.N.Y. Mar. 26, 2014) ("[W]here an officer's actions are deemed objectively reasonable, that officer will be immune under both federal and state law.") (quoting *Mesa v. City of New York*, No. 09 CIV. 10464, 2013 WL 31002, at *12 (S.D.N.Y. Jan. 3, 2013)). Significantly, this conclusion is unaffected by the jury's conclusion that a reasonable officer in Detective Lee's circumstances -- with the information he possessed at the time of the arrest -- would have questioned the veracity of Stephen and Patricia Triolo in a manner sufficient to negate probable cause. *See Dorceant*, 2018 WL 3869891, at *5 ("[I]t is incorrect that the jury's finding that defendant did not have probable cause for plaintiff Allman's arrest precludes a finding of qualified immunity.").

### C. Remaining Claims Against the County

The final issue which Defendants' motion requires the Court to address is whether the County remains liable under the false arrest claim brought pursuant to New York law in light of Detective Lee's entitlement to qualified immunity. Plaintiff contends that "[u]nder state law, Nassau County is vicariously liable" for Detective Lee's violation of Plaintiff's rights in

16

effecting a false arrest. Pl.'s Opp'n. at 5. "Consequently, whether or not Detective Lee is entitled to qualified immunity from personal liability for money damages, [ ] this does not negate the jury's finding that the plaintiff's state law rights were violated and, therefore, Nassau County remains liable on the state law claim." *Id*. (emphasis in original). As discussed below, the Court must reject this argument.

As a court in this Circuit recently affirmed, "it is well established that 'there can be no imposition of vicarious liability in the absence of underlying liability.'" *Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 327 (W.D.N.Y. 2018) (quoting *Shapiro v. Kronfeld,* No. 00 Civ. 628, 2004 WL 2698889, at *24 (S.D.N.Y. Nov. 24, 2004)), *aff'd*, 765 Fed. App'x 493 (2d Cir. 2019); *see Boyler v. City of Lackawanna*, 765 Fed. App'x 493, 497 (2d Cir. 2019) (summary order) (finding that because individual defendants were not liable for false arrest because of the existence of probable cause to arrest, they were "entitled to summary judgment on [plaintiff's] state malicious prosecution and false arrest charges, [and] there are no underlying violations for which to hold the City vicariously liable"); *Fiedler v. Incandela,* 222 F. Supp. 3d 141, 169 (E.D.N.Y. 2016) ("Having concluded that the [i]ndividual [d]efendants are entitled to judgment as a matter of law with respect to [the p]laintiff's claims arising under New York law, the [c]ounty [d]efendants are also entitled to judgment as a matter of law with respect to [the p]laintiff's claims for vicarious liability."); *see also Brown v. City of New York*, No. 14–CV–2700, 2015 WL 427942, at *6 (E.D.N.Y. Feb. 2, 2015) (same). The principle that individual liability does not lie because of qualified immunity (as opposed to the absence of a constitutional violation) does not affect this settled legal precept – where a police officer is immune from suit, any claim premised on vicarious liability against the municipal employer arising from the officer's conduct will not lie. *See Hargroves*, 2014 WL 1271024, at *4 (finding that where

17

individual officers were entitled to qualified immunity, plaintiff's state false arrest and malicious prosecution claims against the City of New York "must also be dismissed. There being no underlying offense for which the City could be held vicariously liable, the same claims must be dismissed as against the City.").

Plaintiff cites three cases in support of his proposition that the County remains vicariously liable under New York law for his false arrest at the hands of Detective Lee: *McCummings v. New York City Transit Auth.*, 177 A.D.2d 24 (1st Dep't 1992), *aff'd*, 613 N.E.2d 559 (1993); *Trivedi v. Golub*, 46 A.D.3d 542, (2d Dep't 2007); and *Rodriguez v. New York City Transit Auth.*, 33 Misc. 3d 1206(A) (Sup. Ct. 2011), *order aff'd in part, modified in part*, 95 A.D.3d 412 (1st Dep't 2012). None of these cases stand for or support the proposition that the County can or should remain liable to Plaintiff on a theory of respondeat superior in light of Detective Lee's immunity from suit.

Plaintiff cites *McCummings* for the proposition that Detective Lee's claim of qualified immunity is "without substance." *McCummings*, 177 A.D.2d at 27. Simply put, the Court fails to see how this case is at all relevant to Plaintiff's contention with respect to the County's liability.

The *Trivedi* case is cited for the following proposition: "in an action against an employer based upon the doctrine of respondeat superior, the employee allegedly committing the tortious conduct is not a necessary party." *Trivedi*, 46 A.D.3d at 543. While this statement is correct as a matter of law, it does not follow -- nor did the court in *Trivedi* hold -- that vicarious liability may lie against an employer where, as a matter of law, there is no liability against the individual employee-tortfeasor. Indeed, in reversing a grant of summary judgment in favor of the employer, the court in *Trivedi* stated that "there has been *no determination* with respect to

18

whether [the employee's] conduct was wrongful or actionable." *Id*. (emphasis added).  What's more, the court in *Trivedi* affirmed the rule against which Plaintiff argues, stating that "[i]n the absence of any wrongful or actionable underlying conduct [by an employee] there can be no imposition of vicarious liability against any alleged employer . . . pursuant to the doctrine of respondeat superior." *Id*.

Finally, Plaintiff's parenthetical reference from *Rodriguez* asserts that the court allowed a "tort of false arrest to proceed against employer under respondeat superior doctrine even after offending employee had died and no longer was individual defendant." Pl.'s Opp'n. at 6.  However, on appeal, the trial court's decision in *Rodriguez* was reversed as to the plaintiff's ability to pursue a claim premised on vicarious liability because the employee's conduct was outside the scope of his employment.  *Rodriguez v. New York City Transit Auth.*, 95 A.D.3d 412, 413 (1st Dep't 2012).  To the extent the trial court's decision[6] holds that a claim premised on respondeat superior can proceed against an employer after the death of the employee-tortfeasor, there is no conflict between this holding and the rule that employer liability premised on vicarious liability cannot lie in the absence of any underlying individual liability.

In short, Plaintiff provides no persuasive authority to support his contention that his claim for false arrest under New York law – and the concomitant award of compensatory damages – remains viable against the County in the absence of liability on the part of Detective Lee.  Rather, the clear weight of authority points in the other direction and the Court finds that Plaintiff's false arrest claim against the County must be dismissed.

---

[6] It should be noted that a New York State trial court's decision is not binding on this Court.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES that portion of Defendants' Rule 50(b) motion concerning the sufficiency of the evidence supporting a finding that no probable cause existed to arrest the Plaintiff. However, the Court GRANTS that portion of Defendants' motion as to Detective Lee's entitlement to qualified immunity. Plaintiff's federal and state law false arrest claims against Detective Lee are therefore dismissed, as is Plaintiff's state law false arrest claim against the County premised on a theory of vicarious liability. The jury's verdict and award of damages is hereby VACATED. The Clerk of the Court is respectfully requested to close this case.

**SO ORDERED**.

Dated: Central Islip, New York
November 4, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge